# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SHARNEE SHERMAN,                                        Case No. 1:21-cv-570

     Plaintiff,                                        McFarland, J.
                                                       Bowman, M.J.

         v.

PORTFOLIO RECOVERY ASSOCIATES,
LLC,

     Defendant

### REPORT AND RECOMMENDATION

This case was initiated by pro se Plaintiff, Sharnee Sherman, in state court, but was removed to this Court by Defendant Portfolio Recovery Associates, LLC ("PRA"). In an Amended Complaint, Plaintiff alleges that PRA is liable for reporting a debt to consumer reporting agencies, and for failing to properly investigate and remove collections from her credit report. (Doc. 7). For the following reasons, the undersigned recommends that Defendant's motion for judgment on the pleadings be granted and that Plaintiff's motion for summary judgment be denied.[1]

### I.     Allegations in Plaintiff's Amended Complaint

Plaintiff filed suit against Defendant in response to the Defendant's debt collection efforts against Plaintiff. In an amended complaint, Plaintiff alleges that on or around October 2019, PRA placed a collection notice on her credit report.  (Doc. 7 at ¶ 2).

---

[1]Pursuant to local practice, all motions in cases filed prior to February 1, 2022 in which a pro se party appears are automatically referred to a magistrate judge for initial consideration. In addition, the presiding district judge has entered an order stating that all motions except for motions for summary judgment are referred to the undersigned. (Doc. 8). Because it is unclear whether the presiding district judge intended to deviate from the customary full referral in cases in which a party proceeds pro se, the undersigned has included discussion of Plaintiff's motion for summary judgment in this R&R. If the referral limitation was intentional, the district judge may disregard the recommended ruling on Plaintiff's motion.

Plaintiff alleges that she "filed several disputes online and via certified mail" seeking validation or verification of the debt from PRA. In response, PRA sent an "itemized list of charges they claimed I owe" as well as a redacted copy of a Bill of Sale between PRA and Synchrony Bank that "showed no relation between the plaintiff and the defendant." (*Id.* at ¶¶ 3-5). Expressing disagreement with the documentation provided to her, Plaintiff requested additional documents from Defendant. Without first providing Plaintiff with "such documentation the plaintiff requested,"[2] PRA initiated a debt collection lawsuit against Plaintiff in July of 2020 in the Hamilton Court of Common Pleas. (*Id.* at ¶ 6). *See generally*, *Portfolio Recovery Associates, LLC v. Sharnee Sherman*, Hamilton County Municipal Court Civil Case No. 20-cv-12075.[3] After several continuances, PRA dismissed its state court lawsuit on February 22, 2021. (*Id.*; *see also* Doc. 7 at ¶ 7). Plaintiff alleges that before, during and after Defendant initiated suit against her in state court, she "sent several letters" in which she requested that Defendant "properly reinvestigate and …remov[e] the collection from [Plaintiff's] credit report." (*Id.* at ¶ 10).

Four months after Defendant dismissed its state court lawsuit against her, Plaintiff filed this lawsuit against Defendant.[4] She alleges that the Defendant's failure to respond to her requests for additional documentation, failure to reinvestigate the debt, and failure

---

[2]Nowhere in her amended complaint does Plaintiff deny owing the credit card debt to Synchrony Bank. Rather, she disputes only the sufficiency of Defendant's proof that it acquired the debt from Synchrony Bank and/or that Defendant owned the debt at the time it sought to collect on the debt.

[3]Although Plaintiff does not identify the state court case number, Defendant included the case number in an Affidavit attached to Defendant's opposition to Plaintiff's motion for summary judgment. (See Doc. 40-1 at ¶4). Additionally, the undersigned takes judicial notice that the case can be located through a public records search on the Hamilton County Clerk of Court website. See https://www.courtclerk.org/records-search/request-record/# (accessed on March 9, 2022).

[4]It is unclear whether Plaintiff previously asserted any of the claims presented in this Court as counterclaims in PRA's prior debt-collection action. However, Defendant does not argue claim preclusion in this case. *Compare, e.g., Daniel v. Midland Funding, LLC*, 2016 WL 4253886, at *1 (E.D. Mich., 2016) (dismissing claims on grounds of res judicata where debtor could have raised the same claims as counterclaims in state court debt collection suit).

to remove the collection report all constitute "willful negligence" as well as "Defamation Of Character" insofar as the Defendant's report of the debt harmed her credit report. (*Id.* at 2). Plaintiff alleges that she has suffered both "mentally and financially." (*Id.*).

## II. Defendant's Motion for Judgment on the Pleadings

### A. Standard of Review Under Rule 12(c)

Unlike a Rule 56 motion that requires the Court to evaluate evidence of record, a motion filed under Rule 12 limits review to the pleadings themselves. The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as the standard for a motion to dismiss under Rule 12(b)(6). *See Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir. 1987). When ruling on a defendant's Rule 12(c) motion, a district court "must construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true." *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 512 (6th Cir. 2001) (citations omitted). Unlike under Rule 56, a court may not consider material outside of the pleadings when ruling on a motion under Fed. R. Civ. P. 12(c). *See Hickman v. Laskodi,* 45 Fed. Appx. 451, 454 (6th Cir. 2002).

Although a plaintiff's *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

3

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint need not contain "detailed factual allegations," but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

### B. Plaintiff's Unauthorized Responses

Prior to addressing the merits of Defendant's motion, the undersigned notes that Plaintiff has filed multiple separate "responses" in opposition to Defendant's motion and/or in support of her own motion. In her first response in opposition to Defendant's motion, Plaintiff provides no substantive argument, and instead merely requests oral argument "to briefly elucidate on her pleadings and to address defendant's motion…." (Doc. 33).[5] After Defendant filed a reply memorandum, (Doc. 34), Plaintiff filed three additional "responses" in opposition to Defendant's motion as well as a "supplemental response." (*See* Docs. 35, 36, 39, 52). Defendant objects to the unauthorized responses. (Doc. 55).

The rules of civil procedure allow for a party to file only one response in opposition to a pending motion. Plaintiff's pro se status does not excuse her failure to comply with

---

[5]The undersigned finds that oral argument would not aid in the Court's disposition of the pending motion. *See generally*, S.D. Ohio Civ. R. 7.1(b)(2) (limiting oral argument to cases in which such argument is "essential to the fair resolution of the case.").

procedural rules. Responses filed following Defendant's reply memorandum are appropriately construed as sur-replies, which are not authorized by either the Federal Rules of Civil Procedure or Local Rules. *See* Local Rule 7.2. If a party seeks to file a sur-reply, he or she first must file a motion seeking leave of court to do so, with the tendered sur-reply attached to the motion. This Court rarely permits sur-replies, and will exercise its discretion to permit the filing only if new issues are raised in a reply memorandum.

Only Plaintiff's first response in opposition to Defendant's motion was authorized but in the interests of justice, the undersigned will consider Plaintiff's first and second responses in opposition to Defendant's motion. (Docs. 33, 34). Defendant's objection to the remaining unauthorized supplemental responses is sustained, and they have not been considered. (*See* Docs. 35, 36, 39, 52, 53, 54).

### C. Defendant is Entitled to Judgment on the Pleadings

Turning to the merits, Defendant's motion should be granted.

### 1. A Liberal Construction of Plaintiff's Claims

"Although pro se pleadings are to be liberally construed, we are not required to conjure up allegations not pleaded or guess at the nature of an argument." *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989). Plaintiff's amended complaint challenges PRA's reporting and collection efforts regarding a credit card debt owed by Plaintiff that PRA allegedly purchased from Synchrony Bank. The scope of Plaintiff's dispute with the Defendant is narrow. In her response in opposition to Defendant's motion, Plaintiff explains that she seeks to hold PRA liable based upon its failure to provide Plaintiff with sufficient proof to satisfy Plaintiff of its ownership of Plaintiff's debt, both at the time it

initially reported the debt to one or more consumer credit agencies, and continuing through PRA's initiation of, and ultimate dismissal of, its state court collection lawsuit. Plaintiff also alleges that PRA initiated its debt collection suit in state court prior to providing her with the additional documentation that she requested. (Doc. 7 at ¶6). State court records confirm that Defendant subsequently dismissed that collection action after determining that Plaintiff had no ability to pay the debt.[6]

The carefully worded factual allegations in the amended complaint do not deny that Plaintiff may have owed a credit card debt originating with Synchrony Bank, or that such debt might have been purchased by Defendant.[7] In her response in opposition to Defendant's motion, Plaintiff explains that her insistent requests for additional proof that her credit card debt was purchased by and owed to PRA did not amount to a "refus[al] to pay on a debt that she may owe," but instead were intended to be "necessary precautions to avoid falling victim of being scammed." (Doc. 35 at 2). In short, any and all claims that Plaintiff asserts in this case are based *entirely* upon her position that PRA's validation or verification of the debt was insufficient, and that PRA failed to prove *to Plaintiff's satisfaction* that she owed the reported debt to PRA and not to Synchrony Bank.

Having determined the narrow scope of Plaintiff's factual allegations, the undersigned next turns to Plaintiff's articulated theories of liability. The amended complaint expressly refers to claims for negligence and defamation of character, both of

---

[6]The parties agree that PRA's inability to collect was the basis for the dismissal. In her response in opposition to Defendant's motion, Plaintiff disputes the date on which PRA learned that her only source of income was exempt from collection, and complains that PRA dismissed its debt collection suit without prejudice. However, the amended complaint contains no claims for which those facts would be relevant.
[7]The Court limits review to Plaintiff's amended complaint and matters of public record (including the state court record of PRC's debt collection suit against Plaintiff). Therefore, the Court does not consider an Affidavit filed by Plaintiff in which she acknowledges having a credit card account with Synchrony Bank, but further suggests (without reference to any date) that at some point she "paid off" that debt. (*See* Doc. 44 at ¶ 4; *see also* duplicate copies at Docs. 48, 50).

which claims conceivably could fall under state law. However, Defendant properly removed this case under federal law, reasonably construing Plaintiff's amended complaint as asserting a claim under the Federal Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, insofar as Plaintiff alleges that PRA is liable for "failing to properly reinvestigate and remove collection" from her credit reports. (Doc. 7 at 2). Defendant now moves for judgment on grounds that Plaintiff's amended complaint fails to state any claim, whether under state law or under the FDCPA. (*See generally* Docs. 31, 32). The undersigned agrees.

In her second response in opposition to Defendant's motion, Plaintiff attempts to present new allegations and claims. (Doc. 35) She argues that her complaint includes "a claim in her previous pleadings for Fraud and Bad faith," (Doc. 35 at 1), a claim that PRA filed "a frivolous lawsuit" when it filed its state court debt collection suit, (*id.* at 2), that PRA committed "abuse of process" in state court, and that "PRA negligently failed to properly investigate on exempt income per their …policy and procedure." (*Id.*). The undersigned declines to consider any newly asserted "claims" in a response in opposition to Defendant's motion for judgment on the pleadings, because none of the referenced allegations are included in Plaintiff's amended complaint and the deadline for further amendment has expired.[8]

---

[8]In addition, nearly all of the referenced new claims are based upon the same factual allegation – that Defendant failed to provide the additional documentation that Plaintiff requested in order to verify or validate the debt. (*See, e.g.*, Doc. 35 at 2, explaining that the fraud claim is based upon "the fact that PRA has never provided sufficient documentation….").

### 2. Failure to State a Claim for Negligence and/or Defamation; Preemption Under the Fair Credit Reporting Act

The amended complaint most clearly asserts that the Defendant is liable for negligence and/or defamation of character based upon harm to Plaintiff's credit rating caused by Defendant's reporting the debt to consumer credit agencies. Plaintiff alleges that PRA failed to prove its ownership of Plaintiff's credit card debt to Plaintiff's satisfaction. She alleges that when she discovered PRA's report on her credit, she requested proof that Defendant had purchased her credit card debt from Synchrony Bank. In response, Defendant sent her an "itemized list of charges" as well as a "redacted Bill of Sale." (Doc. 7 at ¶¶4-5). The amended complaint explains that Plaintiff notified Defendant of her dissatisfaction with that documentation based upon the lack of account level detail that proved (to Plaintiff's satisfaction) that the Bill of Sale included Plaintiff's debt. (*Id.* at ¶¶5-7). The amended complaint alleges that Defendant should be held liable for "willful negligence" based upon its failure to respond to her repeated requests for additional documents, as well as its failure "to properly reinvestigate and remove collection" after failing to provide the requested documentation. (Doc. 7 at 2). In Plaintiff's view, Defendant's failure to provide additional documentation amounts to a failure to investigate and/or renders all subsequent debt collection actions illegal. Plaintiff reiterates her theory of liability under an "Argument" heading in her amended complaint:

> Plaintiff's argument has always been rather [sic] or not the debt buyer owns the account. Also, if the debt buyer can legally collect the alleged debt. Which is why production of such documentation was requested to confirm what promises were made, what representations, and what limitations.
>
> Without the requested documentation, the collection should have been immediately removed from credit report upon request.

(*Id.*)

A plaintiff is not required to include detailed factual allegations to state a claim, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949. Here, Plaintiff's allegations fail to surpass this relatively low bar. She alleges that the Defendant failed to provide her with the additional documents she requested, yet fails to articulate the basis for any legal duty that Defendant had to do so. Similarly, although she also alleges that Defendant's failure to "reinvestigate and remove collection" amounts to "willful negligence," she fails to plead facts that suggest that PRA breached any duty to investigate or remove the report other than her own conclusory assertions that Defendant should have provided her with additional proof that it owned the debt.

PRA is also entitled to judgment because Plaintiff's common law claims are preempted by the FCRA. While Plaintiff's amended complaint asserts "negligence" and/or "defamation of character" without any specific reference to the FCRA, the subject matter of the complaint clearly falls within the scope of the FCRA, because the injury of which Plaintiff complains is damage to her credit based upon Defendant's furnishing a report to consumer reporting agencies. *See* 15 U.S.C. § 1681s-2. The Sixth Circuit has consistently held that "the FCRA preempts state common law claims." *See Scott v. First Southern Nat'l Bank*, 936 F.3d 509, 519 (6th Cir. 2019) (collecting cases); *see also* 15 U.S.C. §§ 1681t(b)(1)(F) and 1681h(e).

In addition to the preemption of her common law negligence and defamation claims, Plaintiff's allegations are insufficient to state any claim under the FCRA for two reasons: (1) she does not include factual allegations to support the conclusion that PRA violated its duties under the FCRA; and (2) she does not allege that she reported her

dispute to a consumer reporting agency, rather than solely the Defendant.  Defendant's motion for judgment on the pleadings focuses on the first point.

A furnisher's relevant responsibilities under § 1681s-2 include "[r]eporting information with actual knowledge of errors," "[r]eporting information after notice and confirmation of errors," and "conduct[ing] an investigation with respect to the disputed information."  15 U.S.C. §§ 1681s-2(a)(1)(A) - (B) and 1681s-2-b(1)(A).  Pursuant to 15 U.S.C. § 1671h(e), and except as otherwise provided in 16 U.S.C. § 1681n and 1681o,

> no consumer may bring any action or proceeding in the nature of defamation . . . or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to [15 USCS § 1681g, 1681h, or 1681m], . . . except as to false information furnished with malice or willful intent to injure such consumer.

*Id.*

Plaintiff does not allege that Defendant furnished *false* information about the debt or that Defendant acted with malice or willful intent to injure Plaintiff.  Rather, Plaintiff defines the Defendant's failure to provide her with additional documentation concerning PRA's ownership of the debt as the act that harmed her.  The amended complaint begins by stating that Defendant furnished information to the consumer reporting agencies "[o]n or around October of 2019." (*See* Doc. 7 at ¶2). Plaintiff then asked for "validation/verification of the alleged debt, specifically requesting Bill Of Sale and Purchase Agreement," in order to prove "that the defendant owns the debt or not…[and] if the defendant can legally sue for the alleged debt."  (*Id.* at ¶3).  Plaintiff complains that Defendant's failure to provide "sufficient" documentation - with "sufficiency" defined solely by Plaintiff - amounts to a failure of validation/verification or a "false" report.  However,

even if there were authority under the FCRA to support the conclusory assertion that Defendant's response to Plaintiff's request was legally deficient (there is not), mere "willful noncompliance with the FCRA does not rise to the level required by § 1681h(e)." *See, e.g., Brown v. Sterling Infosystems, Inc.*, 2010 WL 3057844 n. 5 (N.D. Ohio Aug. 2, 2010), quoting *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1117 (D. Minn. 2004) ("Defendant is correct that plaintiffs' allegation of 'willful noncompliance' . . . does not rise to level of malice or willful intent to injure 'required to avoid § 1681h(e) immunity.'"). Thus, Plaintiff's allegations are not sufficient to state a claim that PRA willfully intended to injure her. *Accord Brown v. Wal-Mart Stores, Inc.*, 507 Fed. Appx. 543, 548 (6th Cir. 2012) (court found the printing of allegedly inaccurate information on a credit report after dispute notification was not sufficiently pled to show malice or intent to injure).

Plaintiff's amended complaint asserts that absent additional "account level" documentation that proves PRA's ownership of the debt, Defendant should have removed its tradeline from her credit report. (Doc. 7 at 2). However, once again, Plaintiff's interpretation of the law does not mesh with the FCRA. Under the FCRA, a furnisher of information like Defendant here "shall not furnish any information relating to a consumer to any consumer reporting agency if the furnisher knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Importantly, the phrase "'reasonable cause to believe that the information is inaccurate' means having specific knowledge, **other than solely allegations by the consumer**, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D) (emphasis added). The prohibition on a furnisher reporting

a disputed debt to a credit reporting agency therefore applies only under the following conditions: "(i) the person has been notified by the consumer . . . that **specific information is inaccurate; and** (ii) the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a)(1)(B) (emphasis added).

Plaintiff does not include specific factual allegations to satisfy this legal standard under the FCRA. *Accord Aubert v. Russell Collection Agency, Inc.*, 2017 WL 6541146 (6th Cir. Aug. 21, 2017). Instead, she includes only her own conclusory allegation that Defendant's report that she owed a debt to PRA (as opposed to Synchrony Bank) was inaccurate. All she offers to support that conclusion is that PRA failed to provide her with the additional documentation she requested. Plaintiff does not otherwise identify any inaccurate information or even any specific error contained within PRA's report to the consumer reporting agencies. Her dispute with is not with the reported debt, per se, but instead with Defendant's failure to produce additional proof of its purchase of the debt from Synchrony Bank. As a matter of law, the failure of Defendant to send Plaintiff additional records did not cause its report of the debt to be "inaccurate information" in violation of the FCRA.

While not argued by Defendant in the pending motion, the undersigned further notes that Plaintiff has no private right of action for asserted violations under § 1681s-2(a). As the Sixth Circuit explained in *Scott v. First Southern National Bank*, 936 F.3d 509, 517 (6th Cir. 2019)::

> The FCRA "creates a private right of action" for consumers to enforce the requirement under § 1681s–2(b) that furnishers of information investigate upon receiving notice of a dispute, but not the requirement under § 1681s–2(a) that furnishers of information initially provide accurate information to consumer reporting agencies. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012).

> This Court has repeatedly held that consumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s–2(b).

*Id*.

The Sixth Circuit has explained that the FCRA limits private remedies in order to balance the interests of the parties and to discourage consumers from filing frivolous disputes.

> In light of § 1681s-2(c)'s express limits, consumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a CRA. Inasmuch as CRAs need not forward frivolous disputes along to furnishers, *see* § 1681i(a)(3), this statutory framework provides consumers with a private remedy against negligent or willful misconduct by a furnisher, while it simultaneously protects furnishers from answering frivolous consumer disputes. *See Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). Such an understanding of § 1681s-2 - one that recognizes a private right of action against a furnisher, but only for failing to comply with relevant requirements, here § 1681s-2(b) - has been adopted by every circuit to address the issue.

*Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 615-16 (6th Cir. 2012). Thus, a furnisher of information cannot be held liable under § 1681s-2(b) unless the furnisher first receives notification of an inaccuracy from the consumer reporting agency, fails to conduct a reasonable investigation, and fails to correct the error. *Id*., 696 F. 3d at 615-16. Here, Plaintiff alleges that she notified Defendant of its allegedly insufficient documentation, but she does not allege that she notified any consumer reporting agency of the dispute or that the consumer reporting agency then provided notice to PRA. *See Downs v. Clayton Homes, Inc.*, 88 Fed. Appx. 851, 853-54 (6th Cir. 2004) (affirming judgment to defendant where plaintiffs failed to show that furnisher received notice of dispute from consumer reporting agency rather than from plaintiffs, additional citation omitted).

### 3.  Failure to State a Claim Under the FDCPA

As discussed above, Plaintiff's amended complaint is reasonably construed as asserting a claim under the FCRA, yet fails to state a cognizable claim under that Act. Similarly, Defendant reasonably assumes that Plaintiff may be "seek[ing] the protection of the FDCPA, based upon the factual allegations in her Amended Complaint."  (Doc. 32 at 8).  Specifically, Plaintiff alleges that: (1)  when she asked Defendant to validate the debt, PRA sent her only a list of itemized charges and a redacted Bill of Sale; and (2) PRA continued to pursue debt collection despite her dispute with Defendant's verification.

Under the FDCPA, a creditor must provide validation of a debt upon a consumer's request.  Specifically, 15 U.S.C. § 1692g(b)  states in relevant part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed ... the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt ... and a copy of such verification ... is mailed to the consumer by the debt collector.

*Id.*

The verification requirement prevents "debt collectors from dunning the wrong person or attempting to collect debts which the consumer has already paid." *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 782 (6th Cir. 2014) (quoting S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1997 U.S.S.C.A.N. 1695, 1699).  The FDCPA does not define what documents are required for verification, but in *Haddad*, the Sixth Circuit explained that the information that a debt collector must provide need not be "extensive."  Instead, "[v]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged

debt." *Chandry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). Thus, the "baseline" for verification is to enable the consumer to "sufficiently dispute the payment obligation." *Haddad*, 758 F.3d at 785. A debt is sufficiently verified where a debt collector provides "the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date." *Id.*

Plaintiff alleges that Defendant PRA provided her with an "itemized list" of credit card charges and a Bill of Sale that identified Synchrony Bank as the original holder of the debt. An itemized statement generally is sufficient to verify a consumer debt. *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173-74 (9th Cir. 2006). While Plaintiff may have sincerely believed that she was entitled to additional proof that PRA had purchased her debt from Synchrony Bank, courts have uniformly held that the FDCPA does not require that. *See, e.g., Crawford v. IC Systems*, 2018 WL 8489601, at *5 (E.D. Ky. Oct. 29, 2018) (rejecting claim that debt collector was required to provide additional information to verify its authority to collect the debt, including debtor's original contract with creditor and the contract between the debt collector and creditor authorizing ICS to collect the debt); *Guevara v. Summit Mortg.*, 2018 WL 1089535, at *4 (E.D. Mich. Feb. 28, 2018) (holding a debt collector is not required to provide proof it is acting on behalf of the creditor to satisfy the verification requirement under § 1692g(b)); *Cooper v. Portfolio Recovery Assocs., L.L.C.*, 2017 WL 4098824, at *5-6 (E.D. Mich. Sept. 15, 2017) (finding debt collectors do not have a responsibility to independently verify the debt such as by obtaining the original contract between a consumer and creditor); *Richardson*

15

*v. Law Offices of Daniels, Norelli, Scully & Cecere, P.C.*, 2017 WL 760538 (S.D. Ohio, February 28, 2017), R&R adopted at 2017 WL 3129804 (S.D. Ohio July 21, 2017), (granting motion to dismiss based upon a lack of factual allegations to affirmatively suggest: (1) that plaintiff was not in fact a party to the referenced credit card agreement; or (2) that defendant was not in fact a valid assignee of that account); *Jagos v. Law Firm of Allen C. Smith, PC*, 2013 WL 3895454, at *5 (E.D. Mich. July 29, 2013) (holding that plaintiffs failed to state a claim based upon alleged inadequacies of Defendants' validation of the debt).

Additionally, once a debt collector provides verification of a debt, it has satisfied its obligations and is not required to respond to any further requests for the same verification. *See Munroe v. Specialized Loan Servicing, LLC*, 2016 WL 1248818 at *9 (E.D.N.Y. Mar. 28, 2016) (explaining that the text of the FDCPA does not entitle the consumer to continuously seek debt validation after initial communication, holding that a consumer "cannot forestall collection efforts by repeating the same unsubstantiated assertions and thereby contend that the debt is 'disputed.'") (quoting *Hawkins-El v. First Am. Funding*, 891 F. Supp. 2d 402, 410 (E.D. N.Y. 2012)); *see also Deere v. Javitch, Block, and Rathbone, LLP*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006) (dismissing FDCPA claims against law firm pursuing debt on behalf of client based upon plaintiff's theory that "more of a paper trail should have been in the lawyers' hands," because "[t]he FDCPA imposes no such obligation.").

For the same reasons, Plaintiff's allegations that Defendant initiated its debt collection lawsuit without validating its debt to her satisfaction does not amount to a deceptive practice in violation of the FDCPA. *See*, *generally*, *Harvey v. Great Seneca*

*Fin. Corp.*, 453 F.3d 324, 330-331 (6th Cir. 2006) ("[T]he filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor"); *Lipa v. Asset Acceptance, LLC*, 572 F.Supp.2d 841, 850 (E.D. Mich., 2008); *Deere*, 413 F. Supp.2d at 891; *Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458, at *9 (N.D. Ill., Feb. 18, 2009).  In sum, Plaintiff's allegations fail to state any claim under the FDCPA.

### III.    Plaintiff's  Motion for Summary Judgment

It is recommended that Plaintiff's motion for summary judgment be denied as moot in light of the foregoing conclusion that Defendant is entitled to judgment on the pleadings on all claims asserted.  The undersigned writes further solely to explain why Plaintiff's motion for summary judgment could alternatively be denied on the merits, should the presiding district judge disagree with the foregoing analysis.

### A.  Standard of Review Under Rule 56

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Relevant to this case, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial only *after* the moving party has carried her initial burden of showing that no genuine issues of material fact remain in dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the moving party (Plaintiff herein) has carried that initial burden, then the non-moving party must present probative evidence that demonstrates that genuine issues remain for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

### B. Plaintiff is Not Entitled to Summary Judgment[9]

Plaintiff's motion for summary judgment argues that this Court should award judgment in her favor based upon Defendant's allegedly "fraudulent scheme of filing a collection lawsuit … without ever providing *legitimate* documentation proving that Ms. Sherman owes PRA." (Doc. 30 at 4 (emphasis added)). Plaintiff further argues that she is entitled to judgment because "PRA attempted to collect on an exempt income after being informed of the type of income plaintiff receives." (*Id.*)

Plaintiff is not entitled to summary judgment on any claim. First, despite (apparently) seeking judgment on allegations of "fraud" and/or "attempt[ing] to collect on an exempt income," neither of those claims are included in the operative pleading: Plaintiff's amended complaint. In a reply memorandum, Plaintiff insists that she "stated

---

[9]Plaintiff has requested oral argument in support of her motion. However, because oral argument would not aid disposition of the pending motion, Plaintiff's request is denied.

fraud in her claims prior to the removal of this case" to federal court. (Doc. 42 at 1). But contrary to that belief, the amended complaint contains no such claims.[10] (*See* Doc. 7). Second, Plaintiff is not entitled to summary judgment because she has failed to carry her initial burden of proof under Rule 56. Her motion contains no statement of uncontroverted material facts, and she fails to point to evidence that would show the absence of any disputed issues of material fact, or that she is entitled to judgment as a matter of law.

Last, despite ostensibly seeking summary judgment under Rule 56, the body of Plaintiff's motion and accompanying exhibits make clear that her focus is the Defendant's refusal, both prior to the filing of this action and during discovery, to disclose an unredacted version of its Purchase and Sale Agreement with Synchrony Bank. Plaintiff previously filed a motion to compel Defendant to produce that same document, and Defendant filed a motion seeking a protective order. Both motions have been denied as moot in light of this R&R.[11]

## IV. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT:**

1. Plaintiff's motion for summary judgment (Doc. 30) should be DENIED;

---

[10]Plaintiff's initial Rule 26(a) disclosures, as amended, were improperly filed of record. (*See* Docs. 15, 18, 22). Pursuant to Rule 5(d), Fed. R. Civ. P., neither initial disclosures under Rule 26(a)(1) or (2), nor any other discovery requests and responses should be filed with the Court as a matter of course. In its motion for judgment on the pleadings, PRA acknowledges that Plaintiff includes new allegations in her disclosures, which Defendant argues "should not be considered an amendment to the Amended Complaint." (Doc. 32 at 4). The undersigned agrees. A pro se litigant is not excused from compliance with the rules of civil procedure. To construe improperly filed discovery disclosures as an amended pleading would go far beyond the liberality generally afforded to the construction of a pro se litigant's pleadings.

[11]For the reasons discussed herein, the Purchase and Sale Agreement between PRA and Synchrony Bank is not material or relevant to any common law claim asserted by Plaintiff, nor is it relevant to any FCRA or FDCPA claim. If this R&R is not adopted and if discovery is permitted to proceed, the Court would grant the motion for protective order and deny Plaintiff's motion to compel based upon the arguments presented by Defendant and controlling authority.

2. Defendant's motion for judgment on the pleadings (Doc. 31) should be GRANTED, and this case should be DISMISSED for failure to state any claim.

_s/Stephanie K. Bowman_____
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHARNEE SHERMAN,                                    Case No. 1:21-cv-570

     Plaintiff,                                    McFarland, J.
                                                    Bowman, M.J.

        v.

PORTFOLIO RECOVERY ASSOCIATES,
LLC,

     Defendant


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).